ANTON CIPERA, ADMINISTRATOR, APPELLEE, V. AMIEL CHMELKA ET AL.; ANTON CHMELKA, APPELLANT.

FILED SEPTEMBER 26, 1910. No. 16,119.

Appeal: EVIDENCE. Only questions of fact are examined upon the decision of this case, and it is found that the decree of the district court is sustained by the evidence.

APPEAL from the district court for Dodge county: CONRAD HOLLENBECK, JUDGE. *Affirmed.*

*A. H. Briggs,* for appellant.

*Louis J. Piatti* and *F. Dolezal, contra.*

REESE, C. J.

In the month of September, 1898, Amiel Chmelka and plaintiff were married, plaintiff receiving something near $1,200 in money and property from her parents, and defendant Amiel a suitable allowance from his parents. On the 24th day of the same month defendant's father, Anton Chmelka, who is also defendant in this action, and who was living on a farm in Dodge county, consisting of 240 acres, conveyed 160 acres thereof to Amiel by a warranty deed, but reserving a life estate in about 2 acres upon which the house in which he lived was situated. There was also expressed a "condition" in the deed that Amiel should annually deliver to his father one-fourth of all the grain, hay, grass, seeds and vegetables of every description raised on the land during the lives of the grantors (Anton and his wife), and that the grantee should not sell nor lease the land during the lives of the grantors without their written consent. There appears

to have been a second house upon the land of which plaintiff and Amiel took possession, and Amiel took or continued in charge of the management of the farm. His efforts in that direction were such that by the month of December, 1905, he was hopelessly swamped in debt, owing in the neighborhood of $12,000. It was then agreed that, as Amiel could not pay his debts, the land was to be reconveyed to his father who assumed Amiel's obligations, but Amiel and wife continued to reside on the land, and, so far as outward appearances indicated, matters were conducted on the farm as before, except that Anton testified that the financial management was assumed by him. Three children were born to Amiel and plaintiff, when plaintiff's health failed and serious surgical operations became necessary. Amiel's conduct toward plaintiff appears to have become unbearable by reason of his habits of intoxication and brutality until plaintiff, as she alleges, was practically driven from the house. She went to Omaha, and in November, 1907, instituted an action against Amiel for divorce and alimony. The charges contained in her petition consisted of repeated acts of adultery, habitual drunkenness and extreme cruelty. This action resulted in a decree in her favor upon the ground of extreme cruelty, and $3,000 alimony was allowed her, which has not been paid. Pending the suit for divorce plaintiff filed a *lis pendens* in the proper office in Dodge county, and commenced a suit to hold the land, in the hands of Anton, for the payment of temporary alimony which had been allowed her, and, after the decree for divorce and permanent alimony had been entered, filed a supplemental petition setting up the facts, and asking relief to the extent of the decree. It was alleged, in substance, in the petition, that the conveyance from her husband and herself to Anton was the result of a conspiracy between her husband and his father to cast her out of the family, by fraud to deprive her of any claim upon the farm for her dower and homestead rights, as well as of money and property contributed by her at the time of

the marriage, and the collection of any alimony for her support, but of which conspiracy she at the time had no knowledge; that she did not understand the legal effect of the deed, but that it was upon the condition and understanding that when the debts of the said Amiel Chmelka were paid the said real estate would be reconveyed to him.

The answer of the defendants consists of admissions of the allegations of the petition as to the relation of defendants to each other; of the suit in the district court in Douglas county for divorce and alimony; that Amiel has no property or other resources out of which to pay the demands of plaintiff; that the children were born of the marriage as alleged; that defendant Anton is the owner of the real estate described in the petition and answer; and alleges that the indebtedness of Amiel, which defendant Anton has paid and assumed, was largely in excess of the value of the property received from him and plaintiff; and a general denial of other averments.

The trial consisted to a great extent of the examination of the issue formed upon the question of the promise and undertaking of Anton to reconvey the real estate when Amiel's debts were paid, and upon which there was a direct conflict in the evidence, and the inquiry as to the amount of money paid or assumed by Anton of the debts of Amiel as compared with the value of his interest in the property conveyed by him and plaintiff to Anton. It was developed that the property had been sold by Anton, but that not all of the purchase price had been paid, leaving more remaining unpaid than the sum of plaintiff's demands. Much time and energy were devoted to the question of how much and what particular debts of Amiel were satisfied by Anton. The decree entered by the district court is a finding in favor of plaintiff, and that she should receive from Anton out of the unpaid portion of the purchase price of the land sold the sum of $1,800, with interest thereon at the rate of 7 per cent. per annum from the 10th day of April, 1908, with costs of suit. Defendant Anton appeals.

It is shown to this court that since the docketing of the appeal and filing of the briefs, and but a short time before the cause was reached for hearing, the plaintiff died, and, by agreement, the cause is revived in the name of Anton Cipera, the administrator of her estate, but, so far as the treatment of the facts are concerned, it will be disposed of as if she were still living.

There are two principal, and perhaps controlling, questions to be considered: Did Anton, the father of Amiel, agree with plaintiff, as an inducement to the execution of the deed to him, that when Amiel's debts were paid he would redeed the land in question to Amiel? If so, was the total of Amiel's debts paid or assumed by Anton equal to or in excess of the value of the property received? The latter question may not be important, since, if that agreement was made, the obligation might exist even though the amount paid out might exceed such value.

1. As to the question of the agreement, the evidence is squarely contradictory. Plaintiff testified in the most positive terms that such was the clear understanding, while both defendants deny that any such agreement was ever even suggested. The notary before whom the deed was acknowledged, who was defendant's banker and no doubt often consulted by him, testified that no such agreement was referred to in his presence at the time of the execution of the deed, the subject discussed being the agreement of Anton to pay Amiel's debts, a considerable amount of which was owing to or in the bank's hands for collection. There is also some evidence of statements made by plaintiff subsequent to the execution of the deed which seem to contradict her contention upon the trial. So far as the oral evidence as to the particular fact is concerned the preponderance seems to be in favor of the defendants. However, there are some facts as to the conduct of defendants shown which point toward the truth of plaintiff's contention. Amiel is the only child of Anton. The execution of the deed to Anton, December 14, 1905, appeared to produce no effect upon the relation of the par-

ties to it.  The premises were not vacated by Amiel or plaintiff and the farm work was continued as before, and which so continued until August, 1907, when plaintiff alleged she was driven from the farm—her home—and, indeed, those relations of father and son seem to have continued until the time of the trial of this cause, although Amiel had removed to Colorado, taking $1,200 of Anton's money with him for the purchase of property there, and their relations in matters of business continue as before.  This is persuasive evidence that there were matters of agreement between them of which plaintiff was not advised, and also that such an agreement was probably made.  It is testified to by defendant Anton that he at one time made such a promise to Amiel, but that it was made a long time subsequent to the conveyance to him, and not at or before that time.  Without reference to that particular question, however, we are persuaded from all the evidence and circumstances shown upon the trial, and by the record, that there has been no time when Amiel did not retain an interest in the real estate, and, after its sale, in the money for which it was sold.

2. It is contended that defendant Anton has paid out, on the debts of Amiel contracted before the conveyance of the land back to Anton, fully as much as the land and other property received were worth.  Defendant Anton so testified, but, if so, it was unfortunate for him, if material, that he could not specify as to all the items of debts paid, nor furnish proof of the fact, except his general statement upon the witness stand.  There was ample proof of the larger claims, such as mortgages upon the property, notes at the bank, etc., but not in detail as to other debts.  We might, probably, go through the record, make and present an itemized statement of his payments proved to have been made, but in view of the whole record and all the circumstances shown, we are satisfied with the decree of the district court, and will have to be excused from entering upon the undertaking.

The decree is                             Affirmed.